**ARKANSAS–BEST FREIGHT SYSTEM, INC., and Arkansas Best Corporation, Plaintiffs,**

v.

**John C. YOUNGBLOOD et al., Defendants.**

No. FS–73–C–9.

United States District Court, W. D. Arkansas, Fort Smith Division.

May 17, 1973.

Harper, Young & Smith, Fort Smith, Ark., for plaintiffs.

Jones, Gilbreath & Jones, Fort Smith, Ark., for defendants.

## OPINION

JOHN E. MILLER, Senior District Judge.

There is before the court motion of defendants for a rehearing on the motion to dismiss, transfer of proceeding, or certification of issues for interlocutory appeal.

On February 9, 1973, the defendants filed their motion to dismiss the complaint and amendment thereto of the plaintiffs filed herein on January 17 and 30, 1973.

Memoranda in support of the motion and in opposition thereto were submitted, and on April 20, 1973, the court filed its opinion and in accordance therewith an order was entered denying the motion. See, Arkansas-Best Freight System, Inc. v. Youngblood (W.D.Ark., 1973) 359 F.Supp. 1115, for a complete history of the transaction between the parties.

On May 10, 1973, the defendants filed the motion that is now before the court, together with memorandum and affidavit of Charles Ephraim in support of said motion, all of which the court has considered.

The defendants first contend in support of their motion that the original opinion of the court hereinbefore referred to and the order entered thereon are based upon (a) erroneous facts erroneously asserted to be without dispute; (b) upon extending the jurisdiction of this court over defendants beyond lawful limits; and (c) depriving defendants of their property without due process of law contrary to the Constitution of the United States.

Upon a consideration of the above contentions, the court is of the opinion that each is without merit, and that the conclusion reached by the court in its opinion of April 20 and the order entered thereon is correct.

### Transfer under 28 U.S.C. § 1404(a)

In the alternative the defendants move to transfer this action to the U. S. District Court for the Western District of North Carolina, Asheville Division, under 28 U.S.C. § 1404(a), which provides:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), was decided before the enactment of 28 U.S.C. § 1404, and the court applied the doctrine of forum non conveniens. In designating some of the factors that should be considered in determining such a motion, the court stated at page 843 of 67 S.Ct.:

"An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."

Norwood v. Kirkpatrick, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955), decided after the enactment of 28 U.S.C. § 1404(a), discussed the difference between the law on forum non conveniens

and the law as declared in § 1404(a). On page 546 of 75 S.Ct. the court said:

"When Congress adopted § 1404(a), it intended to do more than just codify the existing law on forum non conveniens. As this Court said in Ex parte Collett, 337 U.S. 55–61, 69 S.Ct. 944, 947, 93 L.Ed. 1207, Congress, in writing § 1404(a), which was an entirely new section, was revising as well as codifying. The harshest result of the application of the old doctrine of forum non conveniens, dismissal of the action, was eliminated by the provision in § 1404(a) for transfer. When the harshest part of the doctrine is excised by statute, it can hardly be called mere codification. As a consequence, we believe that Congress, by the term 'for the convenience of parties and witnesses, in the interest of justice,' intended to permit courts to grant transfers upon a lesser showing of inconvenience. This is not to say that the relevant factors have changed or that the plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised is broader."

In All States Freight v. Modarelli, (3 Cir. 1952) 196 F.2d 1010, the court considered a petition for mandamus seeking an order against a trial judge who had refused to transfer a case under 28 U.S.C. § 1404(a). In referring to § 1404(a), the court at page 1011 said:

"This is a section which is new in the United States Code. It first appeared September 1, 1948. The course of litigation in these formative years will determine whether the objective clear in the wording of the section is to be accomplished. The statute limits the privilege of the plaintiff to have his lawsuit tried in the forum of his choosing if he can there get jurisdiction over the defendant. The purpose of the limitation is clearly to make the inevitably uncomfortable (for the litigant) judicial process cheaper and more convenient and, if possible, more prompt."

\* \* \* \* \* \*

"The forum non conveniens doctrine is quite different from Section 1404(a). That doctrine involves the dismissal of a case because the forum chosen by the plaintiff is so completely inappropriate and inconvenient that it is better to stop the litigation in the place where brought and let it start all over again somewhere else. It is quite naturally subject to careful limitation for it not only denies the plaintiff the generally accorded privilege of bringing an action where he chooses, but makes it possible for him to lose out completely, through the running of the statute of limitations in the forum finally deemed appropriate. . . . Its words should be considered for what they say, not with preconceived limitations derived from the forum non conveniens doctrine."

On page 1012 the court said:

" \* \* \* we cannot escape the conclusion that it will be highly unfortunate if the result of an attempted procedural improvement is to subject parties to two lawsuits: first, prolonged litigation to determine the place where a case is to be tried; and, second, the merits of the alleged cause of action itself."

In Wisniewski v. Amoco Shipping Co., (E.D.Pa.1972) 350 F.Supp. 201, the court stated the uniformly established rule to be considered in motions for the transfer of cases under § 1404(a) as follows:

"In implementing this statute, however, the Courts give considerable deference to the plaintiff's privilege of bringing an action where he chooses. The burden of showing that the interest of justice would be best served by transferring the case is on the defendant. 'Unless the balance of convenience is strongly in favor of the defendant, the plaintiff's choice of a forum should rarely be disturbed.' Biedrzycki v. Alcoa Steamship Company, 191 F.Supp. 895, 896 (E.D.Pa. 1961)."

On April 30, 1971, the parties entered into a written contract in which the

plaintiffs agreed to purchase from the defendants the outstanding shares of capital stock of Youngblood Truck Lines, Inc. (YTL), a North Carolina corporation, for $5,163,000, designated as the base purchase price, which price was based upon the net worth of YTL and the net worth of Youngblood Service Company (YSC), a North Carolina corporation. It is further provided in the contract that the base purchase price would be adjusted according to the terms of the contract.

On November 15, 1971, the plaintiffs and defendants met at Charlotte, N. C., to consummate the transaction, and the plaintiffs paid the defendants the total sum of $5,072,144.69 and deposited in the North Carolina National Bank, pursuant to the escrow agreement, the sum of $300,000 as provided therein, for a total payment of $5,372,144.69, and it is alleged that all the parties agreed at that time was the consummation purchase price as defined in the contract, subject to future adjustments to be made as provided in the contract and escrow agreement.

Article 1.4 of the contract provides in substance that the defendants should cause to be prepared as soon as possible a complete financial statement of YTL and YSC as of the date of consummation, which was at the close of business on November 14, 1971, and that the financial statement should be audited by Arthur Andersen & Company, independent public accountants, who would issue a certified report to the parties involved showing a determination of the adjusted purchase price.

The purchasers were to have a reasonable time to examine the report and notify the sellers of any exceptions thereto, which might result in an adjustment of the base purchase price after the completion of the audit. Notice of exceptions was duly given. The report of Arthur Andersen & Company was examined by the certified public accountants of the purchasers (plaintiffs), and there was and is a disagreement between those two audits, and the amount involved in

this lawsuit is the difference between the amounts found by each of them as the adjustments to the purchase price.

When the purchase was consummated and delivery made to the sellers of the various properties covered by the contract, all the books and records of the sellers were transferred to the offices of plaintiffs in Fort Smith, Ark.

Article 1.7(c) of the contract provides for a release of the funds in escrow upon final acceptance of the report of Arthur Andersen & Co. computing the adjusted consummation of the purchase price. This report has not been accepted, and the result is that the funds in escrow, $300,000, cannot be released to any of the parties until the determination of the adjusted purchase price. Since the parties have agreed that they cannot agree upon such determination, the plaintiffs ask that the court declare the rights and liabilities of the parties under the contract in order that the transaction may proceed to a complete and final consummation according to the terms of the contract.

The controversy is one involving the accuracy of the conclusions of Arthur Andersen & Co. and the plaintiffs' auditors, Douglas Walker & Co. of Fort Smith, Ark., and the amount of the adjustments finally found due would be paid from the $300,000 which was placed in escrow.

■ Upon a consideration of the issues that are involved herein, the burden of showing that the interest of justice would best be served by transferring the case is on the defendants, and in the opinion of the court this is not shown by the record, but the record is convincing that if the cause was transferred, it would be in complete disregard of the privilege of a plaintiff to commence an action where he chooses and can obtain jurisdiction of the defendant. Plaintiffs commenced this action January 17, 1973. Defendants commenced an action on January 29, 1973, in a state court of North Carolina, which was later removed to the federal court by ABF

and ABC. The plaintiff's choice of the forum should rarely be disturbed. Here the transfer would be an inconvenience to the parties and witnesses and not in the interest of justice. Therefore, the motion to transfer this action under § 1404(a) should be denied.

The defendants do not contend that an order transferring or refusing to transfer an action to another district under the provisions of § 1404(a) is appealable. See, Jiffy Lubricator Co. v. Stewart Warner Corp., (4 Cir. 1949) 177 F. 2d 360, and cases cited in footnote 3 of 9 Moore's Federal Practice, p. 173, ¶ 110.13 [6].

*Transfer under 28 U.S.C. § 1292(b)*

The defendants further allege that if the court denies a rehearing on the motion to dismiss and refuses to transfer the case under the provisions of 28 U.S. C. § 1404(a) that it should "state in writing as provided in Section 1292(b) of the Judicial Code that the Order of April 20, 1973 and the transfer request involve *controlling questions of law* as to which there is substantial ground for difference of opinion and that an immediate appeal may materially advance the ultimate termination of the litigation, staying these proceedings pending the disposition thereof."

Title 28 U.S.C. § 1292, Interlocutory Appeals Act, was enacted in 1958. Professor Moore, in 9 Moore's Federal Practice, 2d Ed., p. 257, ¶ 110.22, after quoting from the Senate and House report while the bill was pending, said:

"28 USC § 1292(b) represents an historic departure from the republicold final judgment rule. With the exception of appeals from proceedings in bankruptcy, prior to 1958 interlocutory appeals were authorized only from described classes of orders, such as those set out in .§ 1292(a). Section 1292(b) makes every interlocutory order potentially appealable if it involves a controlling question of law as to which there is substantial ground for difference of opinion and if an immediate appeal may materially ad-

vance the ultimate termination of the litigation."

Section 1292(b) provides:

"When a district judge, in making in a civi! action an order not otherwise appealable under this section, shall be of the opinion that such order involves *a controlling question of law* as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order."

The first requirement for potential appealability under 1292(b) is that the order involve a controlling question of law, such as a plea of the statute of limitations or where the right of plaintiff to recover is questioned.

A transfer of this case would not end the litigation. A trial will be required to adjust and determine the total purchase price that plaintiffs must pay under the terms and provisions of the contract.

In United States Rubber Company v. Wright, (9 Cir. 1966) 359 F.2d 784, at page 785, the court said:

"The legislative history of subsection (b) of section 1292, which was added to the Judiciary and Judicial Procedure Title in 1958, indicates that it was to be used only in extraordinary cases where decision of an interlocutory appeal might avoid protracted and expensive litigation. It was not intended merely to provide review of difficult rulings in hard cases. This unexceptional contract litigation presents, at most, nothing more than an uncertain question of law relevant

**1130**

to only one of several causes of action alleged below, and no disposition we might make of this appeal on its merits could materially affect the course of the litigation in the district court."

■ An immediate appeal from the order refusing to transfer the case would not materially advance the ultimate termination of the litigation. The only questions that will be litigated are questions of substantive rights and liabilities of the parties, and therefore the court is of the opinion that it should not authorize an appeal from the order refusing to transfer the case.

The motion of defendants is without merit, and an order is being entered today denying and overruling the motion in toto.