**ARKANSAS–BEST FREIGHT SYSTEM, INC., and Arkansas-Best Corporation, Plaintiffs,**

**v.**

**John C. YOUNGBLOOD et al., Defendants.**

**John C. YOUNGBLOOD et al., Plaintiffs,**

**v.**

**ARKANSAS–BEST FREIGHT SYSTEM, INC., et al., Defendants.**

**Nos. FS–73–C–9, FS–73–C–72.**

United States District Court, W. D. Arkansas, Fort Smith Division.

Feb. 8, 1974.

---

Harper, Young & Smith, Fort Smith, Ark., for Ark.-Best Freight System.

Ephraim & Clark, Washington, D. C., Jones, Gilbreath & Jones, Fort Smith, Ark., for John C. Youngblood.

## OPINION

JOHN E. MILLER, Senior District Judge.

The parties in the above consolidated cases will be referred to as follows: Arkansas-Best Freight System, Inc., and Arkansas-Best Corporation, as "buyers," and John C. Youngblood and other stockholders of Youngblood Truck Lines, Inc., and Youngblood Service Company as "sellers."

There is complete diversity of jurisdiction between the parties and the amount involved is in excess of $10,000, exclusive of interest and costs.

The underlying facts and proceedings heretofore had are incorporated in the opinions of the court in Arkansas-Best Freight System, Inc. v. Youngblood, (W.D.Ark.1973) 359 F.Supp. 1115 and 359 F.Supp. 1125, and will not be repeated except insofar as necessary to the consideration and determination of the amended motion of the sellers for a partial summary judgment now before the court.

On January 17, 1973, the purchasers filed their complaint in this court against the sellers for a judgment determining the rights and liabilities of the parties hereto under the agreements and contract that were entered into by the parties on April 30, 1971, and consummated November 15, 1971.

Under the terms of the contract, a copy of which was attached to the complaint, the purchasers paid the sellers $5,072,144.69 and paid to the North Carolina National Bank, pursuant to an escrow agreement, the sum of $300,000 as provided in that contract, which the parties agreed at that time was the consummation purchase price as defined in the contract, subject to future adjustments to be made as provided in the contract and escrow agreement.

Purchasers, inter alia, alleged in their complaint that the parties are in disagreement as to the amount of the adjustments of the purchase price; and that the adjusted base purchase price should have been determined to be $5,266,569.00 as of April 30, 1972.

Finally, after the court had disposed of the various motions and other attacks of the sellers on the complaint of the buyers, the sellers filed a petition in the Court of Appeals for the Eighth Circuit for writ of mandamus, which was de-

nied, and on June 6, 1973, the sellers filed their joint answer to the complaint of buyers. In their answer they admit that the transaction between the buyers and the sellers was consummated on November 15, 1971, and that the sum of $5,072,144.69 was paid to the sellers and the sum of $300,000 was deposited in escrow in the North Carolina National Bank, pursuant to the escrow agreement. In Paragraph VI of the answer the sellers "deny the interpretation and construction placed upon the contracts by the plaintiffs [buyers] and state that said contracts and agreements speak for themselves."

Immediately after summons issued on complaint of buyers was served on sellers, they filed on January 29, 1973, a similar complaint against the buyers in a state court in North Carolina, which case was timely removed by the buyers to the U. S. District Court of the Western District of North Carolina, Asheville Division. On July 24, 1973, the case was transferred to this court, and on August 28, 1973, the cases were consolidated for trial or other disposition.

On May 8, 1973, prior to the transfer of the case from the Federal Court in North Carolina, the sellers filed a motion, hereinafter referred to as the original motion, for partial summary judgment in the principal sum of $270,008, plus interest, on the ground that there is no genuine issue as to any material fact. The motion was supported by the affidavit of Charles Ephraim, attorney for sellers.

On May 21, 1973, the buyers filed their response to the original motion, in which they alleged:

"* * * that said motion for partial summary judgment is premature because (1) of that provision in the contract between plaintiffs and defendants attached to plaintiffs' complaint herein as Exhibit A which same provides in Paragraph 1.4 thereof for presentation by plaintiffs (called Sellers in said contract) of a certified report of Arthur Andersen & Co. as of November 14, 1971 and their opinion on the computation of the purchase price as determined in accordance with the terms of the contract, and (2) said contract does not provide in Paragraph 1.7(c) for payment of any additional purchase price except 'upon final acceptance of the report provided for in Article 1.4 herein' and such report has never been finally accepted by the defendants."

The response was supported by the affidavits of Donald L. Neal, Vice-President of Accounting Services of buyers, and E. B. Sparks, Jr., the accountant for buyers. In the affidavit of Mr. Neal he stated:

"The parties have not been able to agree because the two accounting firms disagree as to accounting methods to be applied in adjusting the purchase price and the sellers disagree with the purchase as to the propriety of certain deductions claimed by the purchaser."

On November 8, 1973, the sellers filed their amended motion for partial summary judgment in the sum of $200,000, plus accrued interest, and alleged that there is no genuine issue as to any material fact as to said amount, and that the sellers are entitled to a judgment as a matter of law for said $200,000. This is the motion that is now before the court. It is supported by the affidavit of J. Raymond Clark, one of the attorneys for sellers. In the affidavit he referred to the affidavit of Charles Ephraim that was filed in the North Carolina court in support of the original motion which was for the recovery of a different amount.

On January 14, 1974, the buyers filed a response to the amended motion, in which they incorporated by reference their response to the motion for partial summary judgment filed May 21, 1972, in the North Carolina court, together with the affidavit of Robert A. Young, III, which they attached to their brief in

support of the response. They further denied that there was no genuine issue as to any material fact and prayed that the motion of sellers be denied.

The only questions now before the court are the ones raised by the sellers' amended motion. The sellers rely upon the provision in Rule 56(a), Fed.R.Civ. P., that a party seeking to recover upon a claim at any time after the expiration of 20 days from the commencement of the action, or after service of a motion for summary judgment by the adverse party, may move with or without supporting affidavits for a summary judgment in his favor upon all or any part thereof.

Rule 56(c) provides:

"The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

There are many reasons why the motion of sellers should be denied and the court will discuss some of the reasons.

The contract between the parties was consummated on November 15, 1971, as of the end of November 14, 1971, and in accordance with the contract the sum of $5,072,144.69 was paid to the sellers and $300,000 was placed in escrow with the bank, for a total outlay by the buyers of $5,372,144.69, subject to adjustments referred to in the contract. Section 1.4 of the contract provides that the sellers shall cause to be prepared as of the date of the consummation, or as soon thereafter as possible, a complete financial statement of the books and records to be audited by Arthur Andersen & Company, independent public accountants. The report of Andersen was to include a statement of the consummation net worth and the auditors' opinion on the computation of the purchase price as determined in accordance with the terms of the contract. The buyers were allowed a reasonable time to examine the report and notify the sellers of any exceptions thereto. This was done, and the buyers promptly notified the sellers of their disagreement with the report.

Article 1.6 of the contract provides that the buyers shall cause to be prepared as of the dates each six months after consummation for three years a statement showing the total adjustments following consummation affecting the base purchase price. Each such statement shall be examined by Douglas Walker & Co., Certified Public Accountants, who will prepare a report thereon issued to the parties involved. Such report will include the auditor's opinion on the computation of the purchase price as determined in accordance with the terms of this agreement. Likewise, sellers shall have a reasonable time to examine the report and shall promptly notify buyers of any exception thereto. This procedure has been followed and there is a dispute between the buyers and sellers as to the adjusted purchase price.

Essentially the sellers ask the court to determine the amount due from buyers pursuant to Article 1.7(c) of the contract, which provides in part:

"Any difference in the adjusted base purchase price from that determined pursuant to Article 1.7(b) shall be determined and any increase thereof shall be paid in cash by the purchaser to sellers and any decrease thereof shall be paid to the purchaser from the escrow monies held by the bank."

Pursuant to the terms of the contract, specifically paragraphs 1.4 and 1.6, the buyers upon receipt of the Arthur Andersen Company report notified the sellers of a disagreement concerning the adjusted base purchase price, and conclud-

ed that the same should have been $5,266,569 on November 14, 1971, as of October 30, 1972. Since that time the figures have changed somewhat by subsequent adjustment, and this is the dispute before the court at the present time.

The buyers alleged in their complaint filed in this court on January 17, 1973, heretofore referred to, that the buyers and sellers, through their agents and authorized representatives, have conferred in an effort to reconcile their difference and to reach agreement as to the adjusted price at the date of the consummation of the contract, but have failed to do so and the parties are "now agreed that they are unable to do so."

In the complaint filed by the sellers in the North Carolina court on January 29, 1973, heretofore referred to, the sellers alleged under the Count of "First Cause of Action" certain portions of the contract; that under the terms of the contract that $5,482,508 is the correct purchase price as of the date of the consummation of the contract; that there is presently existing between the parties a dispute with respect to the interpretation of the various agreements attached to the complaint, and that under the contract the buyers are presently obligated to make full payment in accordance with the certified report of Arthur Anderson & Company. They pray for judgment against the buyers for $410,363.31, and for an order directing the escrow bank to pay to the plaintiffs the sum of $200,000. In the alternative, they pray for an adjudication and interpretation of the agreements and a determination of the controversy existing between the parties.

In 6 Moore's Federal Practice, 2d Ed., ¶ 56.22 [1], p. 2803, it is stated:

"The affidavit, supporting or opposing, with which we are now concerned is the evidentiary affidavit whose form and content is covered by Rule 56(e). This affidavit must be made

on the personal knowledge of the affiant, set forth facts that would be admissible in evidence, and show affirmatively that affiant is competent to testify as to the matters stated therein."

In McSpadden v. Mullins, (8 Cir. 1972) 456 F.2d 428, the court at page 430 said:

"Affidavits in support of summary judgment must be made on personal knowledge and contain admissible evidence. Fed.R.Civ.P. 56(e); United States v. Dibble, 429 F.2d 598, 602 (9th Cir. 1970); Doza v. American National Insurance Co., 314 F.2d 230, 232 (8th Cir. 1963); Sprague v. Vogt, 150 F.2d 795, 800 (8th Cir. 1945); Walling v. Fairmont Creamery Co., 139 F.2d 318, 322 (8th Cir. 1943); 6 J. Moore, Federal Practice ¶ 56.22 [1], at 2803 (2d ed. 1971). Where an affidavit does not meet this standard, it is subject to a motion to strike."

\*　\*　\*　\*　\*　\*

"A summary judgment should be granted with caution, and a plaintiff should be accorded any and all favorable inferences. Cohen v. Curtis Publishing Co., 31 F.R.D. 569, 570 (D. Minn.1962) aff'd, 312 F.2d 747 (8th Cir.), cert. denied, 375 U.S. 850, 84 S. Ct. 106, 11 L.Ed.2d 77 (1963)."

The affidavits of Clark and Ephraim merely state their opinion of what the various reports disclose without stating any personal knowledge whatsoever of the accuracy of the report or reports. The affidavits must set forth facts that would be admissible in evidence and show affirmatively that each affiant is competent to testify as to the matters stated in the affidavit. Thus, the affidavits of Clark and Ephraim cannot be considered by the court in the determination of the issues herein involved. On the other hand, the affidavit of Mr. Neal in opposition to the motion states very frankly why the reports of the auditors disagree.

■ It is abundantly clear that there are serious disputed material facts as to the amount that may be due under the provisions of the contract.

Article 1.7(d) provides upon final acceptance of each of the reports to be made pursuant to Article 1.6 hereof, any difference in the adjusted purchase price from that determined pursuant to Article 1.7(c) shall be determined and an amount equal to any increase shall be paid in cash by buyers to sellers, and an amount equal to any decrease shall be paid by the bank to sellers from the escrow monies held by the bank.

None of the parties question their liability when the correct amount is determined. That is the issue that must be tried either to the court or jury.

Since it is a question of accounting the court may consider the appointment of a Special Master.

In 6 Moore's Federal Practice, 2d Ed., ¶ 56.15 [8], p. 2440, the learned author in his resume states:

" * * * the moving party has the burden of clearly establishing the lack of any triable issue, although the opposing party would at trial have the burden of proof on a particular issue. It is not the function of the trial court at the summary judgment hearing to resolve any genuine factual issue, including credibility; and for purposes of ruling on the motion all factual inferences are to be taken against the moving party and in favor of the opposing party, and the appellate court will do likewise in reviewing the trial court's grant of summary judgment. Discretion plays no real role in the grant of summary judgment: the grant of summary judgment must be proper under the above principles or the grant is subject to reversal. The trial court may, however, exercise a sound discretion in denying summary judgment where, although the movant may have technically shouldered his burden, the court is not reasonably certain that there is no triable issue of fact; where a portion of an action may be ripe for summary judgment but it is intertwined with another claim(s) that must be tried; and in certain other situations."

The above résumé was approved in Taylor v. Rederi A/S Volo, (3 Cir. 1967) 374 F.2d 545, 549. See, also, Bernardo v. Bethlehem Steel Co., (S.D.N.Y.1959) 169 F.Supp. 914, 917.

In Kollsman Instrument Corp. v. Astek Instrument Corp., (S.D.N.Y.1964) 225 F.Supp. 534, the court at page 536 approved the summary of Professor Moore heretofore set forth. The court also stated: "The Court cannot speculate that, for some reason not now evident, there would be no trial of the issues which would remain."

From the complaint of sellers filed in the North Carolina court the total claim of sellers appears to be $410,363.11, but in the motion they are only seeking to recover at this time the sum of $200,000, leaving the remainder of the claim for further adjudication and payment either from the balance remaining in the escrow account or direct by the buyers.

In Volume 10, Wright & Miller, Federal Practice and Procedure: Civil § 2737, the learned authors fully discussed every phase of Rule 56 upon which the motion of sellers is based. At page 675 it is stated:

"§ 2737. Cases Not Fully Adjudicated on Motion

"According to Rule 56(d), if a court finds that summary judgment cannot be granted because there are genuine issues of material fact to be tried, it is empowered, when it would be practicable to save time and expense and to simplify the trial, to issue an order that specifies the facts that appear without substantial controversy."

There is no necessity for such order for the reasons hereinbefore stated, since the only question here is which of

the parties owes the other, and that can only be ascertained by trial, agreement or compromise or Special Master. On page 677 the learned authors state:

"The procedure prescribed in subdivision (d) is designed to be ancillary to a motion for summary judgment. However, unlike the last sentence in Rule 56(c), which provides an interlocutory judgment on a question of liability, Rule 56(d) does not authorize the entry of a judgment on part of a claim or the granting of partial relief. It simply empowers the court to withdraw sham issues from the case and to specify those facts that really cannot be controverted. As one court has noted, the primary purpose of the rule is to 'salvage some results from the judicial effort involved in the denial of a motion for summary judgment.' Inasmuch as it narrows the scope of the trial, an order under Rule 56(d) has been compared to a pretrial order under Rule 16. It should be noted, however, that the procedure under the latter rule is discretionary with the court, whereas, technically speaking, the obligation imposed on the district judge by Rule 56(d) to specify the uncontroverted material facts is compulsory. On the other hand, if the court determines that entering a partial summary judgment by identifying the facts that no longer may be disputed would not materially expedite the adjudicative process, it may decline to do so, and some courts have stated that applications for a Rule 56(d) order are not favored since they bypass the normal pretrial procedures."

In Coffman v. Federal Laboratories, (3 Cir. 1948) 171 F.2d 94, the court considered Rule 54, Fed.R.Civ.P., and in reference to subsection (b) of the Rule, the court, beginning at page 96, stated:

"Rule 54(b) provides for a final judgment upon one claim in a suit predicated upon two or more claims. It is clear, however, that there must be differing occurrences or transactions which form the bases of separate units of judicial action before such a judgment can be entered under that Rule. They are not found here. The plaintiff's claim is for royalties alleged to be due him up to the dates set forth in his bill of complaint. The fact that this claim was divided into several parts in the findings of fact, to determine the impact of the Act and orders thereunder on various segments of it, does not make what is essentially a single claim into several claims arising out of wholly separate and distinct transactions or engagements. The claim, moreover, of which enforcement was being sought, was one for 6% royalties on a particular contract and at most only half of that amount was undisputed. Since the part does not become a separate cause of action a judgment could not be entered under Rule 54(b)."

On page 98 the court stated:

"The other rule to be considered in this connection is Rule 56. That Rule covers summary judgment, that is, those situations in which a court can enter a judgment based on the pleadings and affidavits filed which indicate that a party is entitled to a judgment as a matter of law. We have examined subsection (a) of the Rule in the light of subsection (d) of the same Rule and agree with the Second and Seventh Circuits that the Rule 'does not contemplate a summary judgment for a portion of a single claim in suit. Neither does any other rule of the Rules of Civil Procedure so contemplate, as far as we are aware. A partial summary judgment, as the instant one is termed, under the circumstances before us is a misnomer.' Biggins v. Oltmer Iron Works, 7 Cir., 1946, 154 F.2d 214, 216; Audi Vision, Inc., v. RCA Mfg. Co., 2 Cir., 1943, 136 F.2d 621, 147 A.L.R. 574."

In Commonwealth Ins. Co. of New York v. O. Henry Tent & Awning Co.,

(7 Cir. 1959) 266 F.2d 200, in Syllabus 1, it is stated:

"Federal Civil Procedure.

"In action for a declaratory judgment brought against insured by four insurers who had issued policies containing a value reporting clause under which insured agreed to make monthly reports of total cash value of insured property at each location and under which coverage was to extend only to amount included in last report of values if such reports were not made by insured, who claimed value of property at time of fire was over $32,000 but whose last report stated value of goods to be slightly over $14,000, court did not have power to issue a partial summary judgment for slightly over $14,000 since there was but a single claim made by insured. Fed. Rules Civ.Proc. rule 54(b), 28 U.S.C. A."

On page 201 the court stated:

"The controversy in the case at bar is a single claim. Upon the oral argument, counsel for defendant, with commendable frankness, admitted there was only a single cause of action.

"In countless opinions federal courts have expressed a disapproval of piecemeal litigation. Let us assume that in a claim for services such as was present in the Biggins case, it was first ascertained that two items were not in dispute, and then, a bit later, it was determined that liability on a third item, and still later, on a fourth item, was established. If the construction of the rule by defendants in the case at bar is correct, there might well have been three summary judgments in the supposititious case with executions levied upon each of them. Such fragmentations of a cause of action would be obnoxious to the orderly administration of justice."

For the reasons hereinbefore stated, the motion of sellers for partial summary judgment should be denied, and judgment denying said motion is being entered today.