AMERICAN CAN COMPANY, Plaintiff,

v.

CROWN CORK & SEAL COMPANY, INC., Defendant.

Civ. A. No. 73–C–516.

United States District Court,
E. D. Wisconsin.

July 12, 1977.

Arthur H. Seidel and Thomas W. Ehrmann, Milwaukee, Wis., and Stanley L. Amberg, John B. Pegram, and David M. McConoughey, New York City, for plaintiff.

James P. Brody, Milwaukee, Wis., and H. Francis DeLone, Harvey Bartle, III, and Jean Wegman Burns, and John J. Mackiewicz and Norman L. Norris, Philadelphia, Pa., for defendant.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

The plaintiff American Can Company ("American") filed this action on September 20, 1973, charging the defendant Crown Cork & Seal Company, Inc. ("Crown") with infringement of American's U.S. patent 3,360,157 (" '157 patent") covering a drawn and ironed steel can. The defendant filed motions to dismiss for improper venue and insufficient service of process or, in the alternative, for transfer to the Eastern District of Pennsylvania. For the reasons hereinafter stated, the defendant's motions are denied.

Title 28 U.S.C. § 1400(b) provides:

"Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."

The plaintiff does not contend that the defendant resides in this district and in order to sustain its burden under § 1400(b) must demonstrate that the defendant has a regular and established place of business in this district and has committed an act of infringement here.

The plaintiff relies primarily on *Leach Company v. General Sani-Can Manufacturing Corp.*, 393 F.2d 183 (7th Cir. 1968); *Appleton v. Ronson Service*, 297 F.Supp. 868 (N.D.Ill.1968); and *Stanley Works v. Globemaster, Inc.*, 400 F.Supp. 1325 (D.Mass.1975), in support of its contention that the defendant has a regular and established place of business in the Eastern District of Wisconsin. These decisions set forth the factors to be taken into consideration when determining whether a plaintiff has satisfied the § 1400(b) requirement, and are best summed up in *Stanley Works v. Globemaster, Inc*, supra, at 1332, wherein the Court stated:

"In making this determination, a wide range of evidence—corporate structure, personnel, operations—is relevant. One factor, standing alone, may well not be a sufficient basis for disregarding formal individuality. *Leach Co. v. General Sani-Can Manufacturing Corp.*, 393 F.2d 183, 186 (7th Cir. 1968). Yet when the full scope of evidence is considered, surface appearances may be exposed as a mere cloak for a far more intimate and symbiotic relationship. *Id; Appleton v. Ronson Service of Illinois, Inc.*, 297 F.Supp. 868, 869 (N.D.Ill.1968)."

Upon consideration of these factors, the Court has determined that the defendant did have a regular and established place of business within this district.

In 1965, Crown purchased the Archie Ladewig Company ("Ladewig"), a manufacturer of commercial bottle washers, located in Waukesha, Wisconsin. Ladewig maintained separate corporate books, kept a bank account and safe deposit box in its own name, and paid its Wisconsin income and property tax, and its employees had a separate collective bargaining agreement

with the United Steel Workers local. Despite maintaining these indicators of autonomy, Crown, in fact, treated Ladewig as no more than one of its divisions.

The affidavits and exhibits on file establish the following facts, among others, respecting the relationship between Ladewig and Crown. Crown identified the Waukesha plant as part of its machinery division in reports to its shareholders. Crown and Ladewig had consolidated financial statements. The officers and directors of Ladewig were all officers of Crown. The Ladewig corporate meetings were held at Crown's headquarters, and when Crown closed Ladewig in May of 1974, its machines were shipped to Crown plants in Baltimore and California. Crown even withheld for its own use funds in excess of $900,000 owed Ladewig without paying any interest to Ladewig. A sign displayed outside Ladewig identified the plant as "Crown Cork and Seal Company, Inc., Ladewig Operations." Crown stationery, invoices, purchase orders, and bills of lading were used at Ladewig. The payroll checks of the Ladewig employees were drawn on Crown accounts, and the Ladewig employees participated in the stock purchase plan available to Crown employees.

■ Crown contends that despite the above intermingling of corporate identities in the day-to-day operations of Ladewig, the fact that Ladewig maintained a corporate identity separate from the defendant's, however formal, is sufficient to defeat the regular and established place of business requirement of § 1400(b). *Canon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925); *Kearney & Trecker Corp. v. Cincinnati Milling Machine Co.*, 254 F.Supp. 130 (N.D.Ill.1966). The defendant's authorities are distinguishable from the fact situation before this court in that Ladewig operated as an agent of the defendant, and the defendant was clearly doing business within this district during the period prior to this action.

■ Crown further contends that Ladewig was not a regular and established place of business because it was not engaged in the manufacture, sale, or use of the allegedly infringing product. This contention is without merit in light of *Shelton v. Schwartz*, 131 F.2d 805 (7th Cir. 1942), and *Bourns, Inc. v. Allen-Bradley Co.*, 173 U.S.P.Q. 567, 568 (N.D.Ill.1971), wherein the Court stated:

> "Nothing in the language of Section 1400(b) justifies the conclusion that a defendant's place of business in the district must have some connection with the accused device. The statute requires only that the defendant have committed acts of infringement in the district and have a regular and established place of business there; there is no requirement that the two factors be related."

■ With respect to American's contention that Crown has committed an act of infringement within the district, *Union Asbestos & Rubber Company v. Evans Products Company*, 328 F.2d 949 (7th Cir. 1964), is controlling.

Title 35 U.S.C. § 271(a) defines act of infringement as follows:

> "Except as otherwise provided in this title, whoever without authority makes, uses, or sells any patented invention, within the United States during the term of the patent therefor, infringes the patent."

In *Union Asbestos*, supra, the Court determined that the defendant had sold the allegedly infringing product within the meaning of § 271(a) by engaging in systematic and continuous solicitation of sales of and twice conducting demonstrations of the product within the district. In so deciding, the Court distinguished a line of cases that held a completed sale was necessary for the defendant to have committed an act of infringement. The defendant argues that *Union Asbestos* did not dispense with the requirement of a completed sale but only with the requirement of a completed sale within the district. However, the language of the Court at page 952 states otherwise:

> "We hold that the two demonstrations of the accused device, added to the systematic and continuous solicitation of or-

ders within the district, constitute, for venue purposes, a sufficient degree of selling to amount to 'infringing sales.'" Significantly, the Court did not mention completed sales as a requirement and spoke of "degree of selling," not completed sales.

In further support of the plaintiff's contention that a completed sale is not required by § 271(a), it should be noted that the Supreme Court has defined a patent as a species of property that gives the patentee "' a right to be free from competition in the practice of the invention.'" *Transparent-Wrap machine Corp. v. Stokes & Smith Co.,* 329 U.S. 637, 643, 67 S.Ct. 610, 614, 91 L.Ed. 563 (1947), quoting *Mercoid Corporation v. Mid-Continent Co.,* 320 U.S. 661, 665, 64 S.Ct. 268, 88 L.Ed. 376 (1941). It is apparent from the activity of Crown in this district that it was actively competing with American for the right to supply Schlitz with the allegedly infringing product.

At oral argument, Crown filed a "Statement of Facts" designed to inform the Court of the relevant facts as determined by Crown. That statement, coupled with the exhibits introduced by the plaintiff, establishes that Crown's activities in this district at the time of the commencement of the action satisfy the test of *Union Asbestos,* supra. Crown's salesmen, during their regular visits to Schlitz, displayed and presented free samples of their allegedly infringing drawn and ironed steel beer cans to Schlitz. In February of 1971, Schlitz requested an opportunity to come to Philadelphia, the defendant's headquarters, to observe how the defendant manufactured the cans and requested a supply of the cans for the purpose of conducting qualification tests at Schlitz's Milwaukee plant. In response to this request, the defendant sent four shipments of the allegedly infringing cans to Schlitz in Milwaukee. A number of those shipments contained cans stamped with the Schlitz logo. The purpose of the qualification tests was to determine if Crown was eligible for the solicitation of orders for the sale of the cans. Discussions were held between Schlitz and Crown in August and September of 1972 concerning the possibility of the sale of the defendant's cans to Schlitz for use in its Brooklyn plant. These resulted in Crown's obtaining the Brooklyn account. However, the defendant never supplied the Brooklyn brewery because Schlitz discontinued its operations there in March of 1973. On June 13, 1973, Crown and Schlitz discussed the possibility of Crown's supplying cans to Schlitz's Memphis brewery. On June 21, 1973, Robert J. Siebert, vice-president and director of sales for Crown, sent a letter to the director of purchasing for Schlitz, setting forth proposed initial selling prices of Crown's cans, an anticipated production schedule, and the terms of a proposed supply contract.

■ The above facts establish that Crown demonstrated its product to Schlitz through its salesmen and the qualification tests. These facts further establish that Crown actively participated in a program designed to determine its eligibility to supply Schlitz with cans, that its participation resulted in an agreement to supply the Brooklyn brewery, and that it did indeed attempt to solicit orders for supplying the Memphis brewery. The defendant's contention that it was merely responding to Schlitz's request and that the qualification testing was merely experimentation flies in the face of the fact that the central purpose of compliance with the requests and participation in the qualification program was to obtain the right to supply Schlitz with the allegedly infringing product, and that Crown actively engaged in activities designed to achieve that end. Crown committed an act of infringement within the meaning of *Union Asbestos,* supra.

■ Crown has also moved to dismiss the action for insufficiency of service of process. The plaintiff served the summons and complaint upon Ray Anders, the managing agent of Ladewig. The Court having determined that Ladewig was a regular and established place of business of the defendant, the service of Anders was sufficient service on Crown. 28 U.S.C. § 1694.

■ Having denied the defendant's motions to dismiss the action, the Court

must determine the defendant's motion for transfer of the action to the Eastern District of Pennsylvania.

Title 28 U.S.C. § 1404(a) provides:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

The burden is on the defendant to demonstrate to the Court that the balance of convenience strongly favors the defendant. *Butterick Co. v. Will,* 316 F.2d 111, 112 (7th Cir. 1963); *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). Great weight is accorded the plaintiff's choice of forum. *General Portland Cement Co. v. Perry,* 204 F.2d 316, 319 (7th Cir. 1953); *Handlos v. Litton Industries, Inc.,* 304 F.Supp. 347 (E.D.Wis.1969).

American contends that the action should not be transferred because (1) it has chosen the Eastern District of Wisconsin as its forum; (2) it intends to call as a witness a Mr. Bolt, the only living inventor of the product that is the subject of this lawsuit, and will have to avail itself of the compulsory process of this court to insure Mr. Bolt's attendance; (3) a large number of the documents relating to the development of the patented invention are located in large part in Barrington, Illinois; and (4) nine of the eleven witnesses it intends to call find this district more convenient than the Eastern District of Pennsylvania.

Crown asserts that the Eastern District of Pennsylvania is more convenient because (1) the trial counsel, patent staffs, research facilities, the location of documents, and proposed witnesses of both parties are in close proximity to that district; (2) Crown intends to call as yet unidentified experts who would find Pennsylvania more convenient; (3) Crown has facilities near Philadelphia that the Court may desire to view in the course of trial; (4) two key witnesses, the supervisor of the deceased coinventor and the patent attorney, find Pennsylvania more convenient; (5) American has little contact with this district and its choice of forum should not be given great weight;

and (6) there were two actions filed subsequent to this action pending in the Eastern District of Pennsylvania, which are closely related to this action, and in the interests of judicial economy, this action should be transferred to that district.

The Court finds that Crown has not met its burden. American has a plant within this district, and the negotiations for the sale of the allegedly infringing product took place within this district. In light of this, the plaintiff does have sufficient contact with this forum to justify this Court's giving great weight to its choice. Additionally, many of the factors advanced by Crown in favor of a transfer relate to American's convenience, i. e., trial counsel, prospective witnesses, research facilities, document location, and patent counsel. The defendant cannot assert plaintiff's inconvenience in support of a motion to transfer. *Sun Oil Co. v. Lederle,* 199 F.2d 423 (6th Cir. 1952); *Hayes v. Chesapeake & Ohio Railway Co.,* 374 F.Supp. 1068 (S.D.Ohio 1973). Neither can the defendant assert the inconvenience of the chosen forum to its witnesses without making a detailed showing to the court specifying the key witnesses with general statements of the subject matter of their testimony. *Development Co. of America v. Insurance Co. of North America,* 249 F.Supp. 117, 118 (D.Md.1966); 15 Wright, Miller & Cooper, Federal Practice & Procedure, § 3851, at 270–271.

In effect, then, the only showing made by defendant in support of its motion to transfer is the convenience of its counsel and the judicial economy achieved by placing the related suits in the same district. The latter showing is entitled to little weight. In *Kerotest Manufacturing Co. v. C–O Two Fire Equipment Co.,* 342 U.S. 180, 185, 72 S.Ct. 219, 222, 96 L.Ed. 200 (1952), the Court said:

"The manufacturer who is charged with infringing a patent cannot stretch the Federal Declaratory Judgments Act to give him a paramount right to choose the forum for trying out questions of infringement and validity. He is given an equal start in the race to the courthouse, not a headstart. * * * "

As to the showing made regarding the convenience of Crown's counsel, although that is a valid consideration for the Court on a transfer motion, *Mobil Oil Corp. v. W. R. Grace & Co.*, 334 F.Supp. 117, 124 (S.D.Tex. 1971), it cannot be said to demonstrate that the balance of convenience strongly favors Crown.

For the foregoing reasons,

IT IS ORDERED that the defendant's motion to dismiss the action for improper venue is denied.

IT IS FURTHER ORDERED that the defendant's motion to dismiss the action for insufficiency of process is denied.

IT IS FURTHER ORDERED that the defendant's motion to transfer this action to the Eastern District of Pennsylvania is denied.