Robert **HOUK** and Jane Houk, Plaintiffs,

v.

**KIMBERLY–CLARK CORPORATION, Defendant.**

No. 84–1161–CV–W–0.

United States District Court, W.D. Missouri, W.D.

July 12, 1985.

Paul L. Redfearn, Robert J. Perkins, Kansas City, Mo., for plaintiffs.

Joseph A. Sherman, Steven J. Quinn, Richard D. Rhyne, Kansas City, Mo., for defendant.

### ⸱ ORDER

ROSS T. ROBERTS, District Judge.

This is an action to recover damages for personal injuries allegedly sustained by plaintiff Robert Houk as a result of the negligence of defendant in connection with safety procedures at a construction site located in La Grange, Georgia. Jane Houk, the injured plaintiff's wife, seeks damages for loss of consortium. Both plaintiffs are residents of Missouri, and have been so for all relevant times described in this lawsuit. The matter is presently before the court for a ruling on defendant's motion that the cause be transferred to the United States District Court for the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a). After considering the excellent briefs submitted by the parties, and for the reasons expressed hereinbelow, the court has concluded that defendant's motion will be denied.

### BACKGROUND

The pleadings appearing in the record indicate that defendant, a Delaware corporation registered to do business in Georgia and Missouri, contracted with the Daniel Construction Company, a South Carolina corporation, as the general contractor, to build a non-woven fabric manufacturing plant for it on land leased by defendant from The Development Authority of La Grange. Daniel Construction Company in turn subcontracted with Southern Foundations, Inc., a Georgia corporation, for the installation of piles for the plant's foundation.

Sometime prior to July 6, 1983, Charles Houk, the president and general manager of Southern Foundations, contacted his

brother, Robert Houk, in Oak Grove, Missouri, and asked if he would temporarily work at the La Grange construction site. On July 6, 1983, Robert Houk, while working as an employee of Southern Foundations, was injured when he was struck by one of three piles that fell from a crane at the construction site. Houk received emergency medical care at a hospital in Columbus, Georgia, and, some three weeks following the accident, was flown by air ambulance to Missouri where he was admitted to the University of Kansas Medical Center.[1] Houk was later transferred to The Medical Center of Independence, and is presently a long-term patient at the Swope Ridge Rehabilitation Center where he receives around-the-clock medical care for the injuries he sustained.

This action, originally filed by plaintiffs in the Circuit Court of Jackson County, Missouri, was removed to this forum by defendant on November 20, 1984. Defendant has now moved that the case be transferred to the United States District Court for the Northern District of Georgia under § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[2]

### GOVERNING STANDARDS

■ In determining whether to exercise its discretion to transfer an action on the basis of § 1404(a), the court may consider a myriad of factors, including the convenience of the parties, the convenience of the witnesses, the availability of judicial process to compel the attendance of unwilling witnesses, the governing law, the relative ease of access to sources of proof, the possibility of delay and prejudice if a transfer is granted, and practical considerations indicating where the case can be tried more expeditiously and inexpensively. *See, e.g., Stabler v. New York Times Co.,* 569 F.Supp. 1131, 1137 (S.D.Tex.1983); *Durham Productions v. Sterling Film Portfolio,* 537 F.Supp. 1241, 1243 (S.D.N.Y.1982); *Dayton Power & Light Co. v. East Kentucky Power Corp.,* 497 F.Supp. 553, 555 (E.D.Kent.1980).

■ In any determination of a motion to transfer under § 1404(a), the plaintiff's choice of a proper forum is entitled to great weight, and will not be lightly disturbed, *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3rd Cir.1970), *cert. denied,* 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971) (plaintiff's choice of forum is "paramount consideration"); *Mowrey v. Johnson & Johnson,* 524 F.Supp. 771, 775 (W.D.Pa. 1981), especially where the plaintiff is a resident of the judicial district in which the suit is brought, as is the case here. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255, 102 S.Ct. 252, 265, 70 L.Ed.2d 419 (1981); *Culbertson v. Ford Motor Co., Inc.,* 531 F.Supp. 406, 407 (E.D.Pa.1982); *Ronco, Inc. v. Plastics, Inc.,* 539 F.Supp. 391, 401 n. 12 (N.D.Ill.1982).

■ It is incumbent upon the party seeking transfer to make a clear showing that the balance of interests weighs in favor of the proposed transfer, and unless that balance is strongly in favor of the moving party, the plaintiff's choice of forum should not be disturbed. *Carty v. Health-Chem Corp.,* 567 F.Supp. 1, 3 (E.D. Pa.1982); *Hodson v. A.H. Robins Co., Inc.,* 528 F.Supp. 809, 817 (E.D.Va.1981); *Oce-Industries, Inc. v. Coleman,* 487 F.Supp. 548, 553 (N.D.Ill.1980). Where the balance of relevant factors is equal or only slightly in favor of the movant, the motion to transfer should be denied. *Lee v. Ohio Casualty Ins. Co.,* 445 F.Supp. 189, 192 (D.Del. 1978); *B.J. McAdams, Inc. v. Boggs,* 426 F.Supp. 1091, 1105 (E.D.Pa.1977). Concom-

---

1. Plaintiff's wife and children had maintained their residence in Missouri while he was temporarily employed in Georgia.

2. There is no dispute that the present action "might have been brought" in the district court for the Northern District of Georgia. Instead, the parties' disputes center on whether transfer to that forum would be for the convenience of the parties and witnesses and in the interest of justice.

itantly, a transfer which would merely shift the inconvenience from one party to another should not be granted. *Darby Drug Co., Inc. v. Zlotnick,* 573 F.Supp. 661, 664 (E.D.N.Y.1983); *Lieb v. American Pacific Inter., Inc.,* 489 F.Supp. 690, 697 (E.D.Pa. 1980); 15 *Wright, Miller & Cooper, Federal Practice and Procedure:* § 3848 at 246.

## CONVENIENCE OF WITNESSES

■ The convenience of witnesses is said to be a primary, if not the most important, factor in passing on a motion to transfer under § 1404(a). *Cambridge Filter Corp. v. International Filter Co.,* 548 F.Supp. 1308, 1311 (D.Nev.1982); *American Standard, Inc. v. Bendix Corp.,* 487 F.Supp. 254, 262 (W.D.Mo.1980). This factor involves not merely a consideration of the number of witnesses located in or near the respective forums, but the nature and quality of their testimony in relationship to the issues of the case. *Midwest Precision Services v. PTM Industries,* 574 F.Supp. 657, 659 (N.D.Ill.1983); *Vaughn v. American Basketball Association,* 419 F.Supp. 1274, 1276–77 (S.D.N.Y.1976). As a result, it is the burden of the party seeking transfer to specify clearly the key witnesses to be called and indicate what their testimony will entail. *Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2nd Cir. 1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979); *American Standard, Inc. v. Bendix Corp., supra* at 263; *American Can Co. v. Crown Cork & Seal Co., Inc.,* 433 F.Supp. 333, 338 (E.D. Wis.1977).

In an attempt to satisfy this burden, defendant has identified a number of witnesses deemed to be material by indicating their name, job title or description, relationship to the events or issues in this lawsuit, and place of residence. Moreover, defendant has indicated, with varying degrees of specificity, what the testimony of these witnesses would be at trial.

Three of the witnesses so identified were employees of Daniel Construction Co. on the day of the accident and were eyewitnesses to the accident. All three reside in La Grange, Georgia. Another employee of Daniel Construction Co. identified by defendant is Thomas C. Casper, safety manager at the construction site, who could describe the usual procedure followed by Southern Foundation employees in transporting piles. Mr. Casper, also a resident of La Grange, Georgia, further indicates in his affidavit that he would testify that defendant had no supervision or control over the construction site or safety procedures in force there.

Defendant has also identified six of its employees said to possess information relating to the duties and responsibilities of the contractor, subcontractor, and engineering companies involved in the construction project. All six of these individuals reside in Georgia. In addition, Charles Houk, plaintiff's brother and supervisor for Southern Foundations at the La Grange project site, resides in La Grange. Of the other individuals listed by plaintiffs in their interrogatory answers as having witnesses the accident, four are residents of California, one of Alabama, and one of North Carolina. Defendant also suggests that since the contractor, subcontractors, and engineering companies involved in the project are corporations with their principal places of business in Georgia or adjoining states, any employees of those companies with material knowledge regarding the issues of site control and safety responsibility are likely to be located in Georgia or its vicinity. Finally, defendant notes that the treating physicians who were involved in the diagnosis and care of plaintiff for the approximately three weeks immediately following the accident are located in Columbus, Georgia.

In summary, defendant contends that the predominant number of key witnesses with material testimony to offer at trial are located in Georgia or states adjacent to Georgia, so that Georgia would be a more convenient forum for them than Missouri. Those witnesses listed by plaintiffs as residing in California, defendant suggests, would be equally inconvenienced by either a Georgia or Missouri forum. Defendant

acknowledges that plaintiffs themselves would be inconvenienced by a Georgia forum, but suggests that their testimony as to liability would not be material, so that this factor does not outweigh the inconvenience of the present forum to the great number of key witnesses located in Georgia.

Plaintiffs disagree with the assertion that eyewitnesses to the accident and those individuals with knowledge of safety responsibilities under the construction contracts are material witnesses in this action. There is no material issue, plaintiffs argue, as to how the accident occurred and, in addition, defendant was responsible as a matter of law to see that its premises were safe pursuant to its non-delegable duty as a landlord. Therefore, plaintiffs urge, the material issue is not who was responsible for safety, but whether or not the safety standards were in fact violated. Under the analysis suggested by plaintiffs, the employees of Southern Foundations are in the best position to testify to the hoisting methods employed on the construction site. The seven employees of Southern Foundations identified by plaintiffs as having such knowledge and who were present on the site the day of the accident include four residents of California, one of Alabama, one of Mississippi, and one of Georgia. According to an affidavit submitted by Charles Houk, the single Georgia resident, he has agreed to voluntarily appear in Missouri for trial. Plaintiffs contend that of these remaining witnesses, a Georgia forum would be just as inconvenient as a Missouri forum, if not more inconvenient for those witnesses who reside in California.

As to medical witnesses, plaintiffs point out that the physicians and therapists who have treated Robert Houk on a continuous basis since his transfer back to Kansas City are in a better position than the medical personnel in Georgia to testify to the full nature and extent of his injuries.

The court is in a less advantageous position than are the parties to assess the materiality of testimony to be elicited from the various witnesses, but it does appear that the convenience of the witnesses, as well as the relative cost of securing their presence at trial, tends somewhat to favor transfer to Georgia, although not to the extent urged by defendant. As is clear from earlier discussion, however, the convenience of the witnesses is only one factor, albeit a weighty one, in determining whether an action should be transferred. Since the convenience of the witnesses, considered in isolation, does not clearly dictate transfer of the case to Georgia, the overall weight to be accorded this factor can be meaningfully determined only after a review of the other relevant factors.

### CONVENIENCE OF PARTIES

The substantial weight to be given plaintiffs' choice of a proper forum is a factor which has been touched on previously in this order and need not be repeated at length. Plaintiffs contend in relation to this point that transfer of this action to Georgia would result in greatly increased financial costs to them, costs which they would be unable to bear. The anticipated costs for what plaintiffs estimate could be a two to three week trial[3] include the transportation of Robert Houk to Georgia via air ambulance, medical care and housing for Robert Houk while in Georgia, transportation and housing for Jane Houk and the couple's children, and transportation and housing for counsel.

Although not entitled to great weight, the parties' relative financial ability to undertake a trial in any particular forum is a relevant consideration. *Cambridge Filter Corp. v. International Filter Co.,* 548 F.Supp.1 308, 1311 (D.Nev.1982); *Vaughn v. American Basketball Association, supra* at 1277; *Grey v. Continental Marketing Associates, Inc.,* 315 F.Supp. 826, 831 (N.D.Ga.1970). Contrary to defendant's assertion that the transportation and living expenses for plaintiffs' attorneys will be expenses incurred by plaintiffs only

---

3. In defendant's estimation, the trial of this matter would only take four days.

if counsel chooses to make them so, the cost of counsel's transportation and other expenses must ultimately rest with plaintiffs. Hence, this factor is of direct relevance to the convenience of the parties. *Mobile Oil Corp. v. W.R. Grace & Co.*, 334 F.Supp. 117, 125 n. 5 (S.D.Tex.1971); *Los Angeles Memorial Coliseum Com'n v. National Football League*, 89 F.R.D. 497, 501 (C.D.Cal.1981). As evidenced somewhat by defendant's apparent willingness to underwrite some of plaintiffs' additional expenses in connection with a transfer to Georgia, the parties' relative financial resources is a factor militating against transfer.

■ In addition to the customary degree of deference to be accorded plaintiffs' choice of forum, the court is compelled to consider plaintiff Robert Houk's medical condition. *Vassallo v. Niedermeyer*, 495 F.Supp. 757, 760 (S.D.N.Y.1980). This factor is of considerably greater concern to the court than the limited financial resources of plaintiffs. Plaintiffs have suggested that in light of Houk's need for continuous medical care, transfer of this case to Georgia would not only be inconvenient for him, but medically dangerous as well. Plaintiffs have submitted a report and affidavit of Dr. Michael E. Howard, plaintiff's consulting neuropsychologist, wherein Dr. Howard indicates that although plaintiff is showing substantial gains in his cognitive abilities since admission to the Swope Ridge Rehabilitation Center, transfer from that institution at the present time would hamper his recovery. In Dr. Howard's opinion, plaintiff can be discharged from the care facility only upon a remarkable improvement in his level of functioning, an event deemed unlikely in the foreseeable future.

Defendant suggests in the first instance that it is somewhat speculative to conclude that travel to Georgia would be medically dangerous for plaintiff. Assuming, defendant goes on to argue, that travel to Georgia would be detrimental to plaintiff's health, so too would travel from the care facility in Independence, Missouri, to the federal courthouse in Kansas City, Missouri, albeit to a lesser degree. Defendant also suggests that, given the limitations on plaintiff's capacities to speak and to understand speech, his appearance at trial would not serve any clear purpose, and that documentary evidence such as photographs or video-tape would suffice to show the nature and extent of his injuries.

■ The exact nature and extent of plaintiff's physical disabilities, and the resulting effect on his ability to travel, remain subject to ultimate proof at trial. Those matters need not be established to a high degree of certainty for the purpose of ruling defendant's motion to transfer. The salient consideration for the latter purpose is this court's unwillingness to direct an action which might pose a risk, of whatever magnitude, to plaintiff's continued rehabilitation or effectively force him to abandon his right to be present at the trial of this lawsuit. It may be, as defendant has suggested, that plaintiff's ability to attend trial is problematic regardless of the location. Nevertheless, it seems reasonable to assume, as the court does, that the inconvenience and risks associated with plaintiff being transported the relatively short distance from Independence to the federal courthouse in Kansas City, Missouri, are substantially less than those associated with the greater disruption which would be involved in travel to Georgia.[4]

On the basis of the foregoing concerns, principally those relating to Robert Houk's medical condition, the court concludes that absent a demonstration by defendant that the other factors involved in consideration of a § 1404(a) motion are sufficient to shift the balance strongly in favor of transfer, the fact that trial in Georgia would slightly favor the convenience of the witnesses does not justify disturbing plaintiffs' choice of forum.

4. Whether the court would permit, as plaintiffs suggest it should, a jury visit to the Swope Ridge facility either to view plaintiff's injuries or hear testimony from him, is a question left unruled at present.

## AVAILABILITY OF JUDICIAL PROCESS

▮▮▮▮▮ An additional factor said by defendant to justify transfer of this matter to Georgia is the lack of process to compel the appearance in this forum of the non-party witnesses who reside beyond the 100–mile limit of this court's subpoena power. While the unavailability of judicial process to compel the attendance of witnesses who will not voluntarily appear is certainly a factor weighing in favor of transfer, *see Vassallo v. Niedermeyer, supra* at 760; *Commercial Solvents Corp. v. Liberty Mutual Ins. Co.,* 371 F.Supp. 247, 250 (S.D. N.Y.1974), it is not controlling where, as in the present case, the defendant's argument merely assumes that the witnesses in question would not appear voluntarily at a trial in Missouri. *Micheel v. Haralson,* 586 F.Supp. 169, 173 (E.D.Pa.1983); *First National City Bank v. Nanz, Inc.,* 437 F.Supp. 184, 189 (S.D.N.Y.1975). It might further be noted that defendant has not shown that use of video-taped depositions would be inadequate. *Micheel v. Haralson, supra* at 173. Due to the apparent fact that most of the employees of Southern Foundations identified as material witnesses by plaintiffs reside in states other than Georgia, the difficulties attendant to unavailability of process would exist even if this case were to be transferred to Georgia.[5]

## AVOIDANCE OF MULTIPLE LITIGATION

▮▮▮▮▮ Another factor cited by defendant as favoring transfer is its announced intention to seek indemnity from the contractors and subcontractors, corporate entities which cannot be joined as parties in this forum, but can in Georgia. As a general matter, the avoidance of "duplicative and piecemeal litigation" is a factor that weighs in favor of transferring an action to a district in which all parties can be joined in a single action. *Kreisner v. Hilton Ho-*

*tel Corp.,* 468 F.Supp. 176, 179 (E.D.N.Y. 1979). The ability of a party to implead as a third-party defendant an entity which cannot be subjected to the jurisdiction of the transferor court may thus be an appropriate reason for granting a transfer; however, this factor is not determinative and will not outweigh other factors militating against transfer. *Murphy v. Allen County Claims & Adjustments, Inc.,* 550 F.Supp. 128, 133 (S.D.Ohio 1982); *Hervey v. United States,* 450 F.Supp. 1148, 1148 (E.D.Wis.1978); *Lee v. Ohio Casualty Ins. Co., supra* at 192; *Prentice-Hall Corp. Systems, Inc. v. Ins. Co. of North America,* 81 F.R.D. 477, 481 (S.D.N.Y.1979). This factor is further diminished in importance where it is not clear that the same evidence that would be required for the plaintiff to establish his case against the defendant would also be required for the defendant to establish his case against a third-party defendant. *Prentice-Hall Corp. Systems, Inc. v. Ins. Co. of North America, supra* at 481. In finding that this factor is not entitled to great weight in passing on defendant's motion, the court quotes with approval the following passage from *Robbins Music Corp. v. Alamo Music, Inc.,* 119 F.Supp. 29, 30 (S.D.N.Y.1954):

> "Undoubtedly, it is desirable that the rights of all interested parties, whenever possible, should be disposed of in a single litigation. But plaintiffs should not be inconvenienced and burdened with additional expense to litigate in a distant forum on the possibility that an alleged tort-feasor may be indemnified in plaintiffs' action by another tort-feasor. The defendants' right to indemnity is not lost if Schumann is not a defendant in this action. Accordingly, Schumann's determination not to appear in this action ... should not serve as the basis for compelling a transfer and defeating plaintiffs right to choice of forum...."

---

**5.** Any weight to be accorded this factor is arguably diminished by the nature of the witnesses' occupations, as experience suggests that the testimony of construction workers, like that of

seamen, must often be given in the form of depositions. *See, Drees v. Lykes Bros. S.S. Co.,* 500 F.Supp. 15, 17 (S.D.N.Y.1980).

## APPLICATION OF FOREIGN LAW

Assuming for present purposes only that defendant is correct in arguing that the substantive law of Georgia, rather than that of Missouri, governs this action, this consideration is entitled to little significance in the court's decision. While some cases speak of the appropriateness of leaving the construction of a state's law to those courts most familiar with it, *Kreisner v. Hilton Hotel Corp, supra* at 179; *Vaughn v. American Basketball Association, supra* at 1278, the general view, one to which this court ascribes, is that this factor is to be given little weight where, as appears to be the case here, the foreign law to be applied is neither complex or unsettled. *AMF, Inc. v. Computer Automation, Inc.*, 532 F.Supp. 1335, 1347–48 (S.D.Ohio 1982); *Bodine's, Inc. v. Sunny-O, Inc.*, 494 F.Supp. 1279, 1286 (N.D.Ill. 1980); *Busch v. Sea World of Ohio*, 95 F.R.D. 336, 341 (W.D.Pa.1982). This court is routinely called upon to apply the law of other jurisdictions in diversity actions; hence, the possibility that Georgia law might govern this action is not of great moment.

## COST EFFECTIVENESS AND EASE OF ACCESS TO SOURCES OF PROOF

Defendant accurately notes that the costs involved in securing the presence of witnesses and the relative ease of access to sources of proof such as records and documents are relevant considerations in a motion for transfer. *American Standard, Inc. v. Bendix Corp., supra* at 264. As to the former point, the discussion concerning the relative financial positions of the parties is largely dispositive. Accepting as true, as one may reasonably do, the assertion that the production of witnesses would be less costly in Georgia than in this forum, the court is inclined to discount this as a meaningful factor for transfer due to the presumably ample financial resources of defendant. *Neff Athletic Lettering Co. v. Walters*, 524 F.Supp. 268, 274 (S.D.Ohio 1981). A similar conclusion is warranted with respect to the documents and records of defendant said to be located in Georgia, since any such documents can easily be photocopied and transported from their place of storage. *American Standard, Inc. v. Bendix Corp., supra* at 264.

## CONGESTION OF COURT'S CALENDAR

Finally, defendant has suggested that an examination of the respective case loads of this court and the district court in Georgia might support transfer of this case to Georgia. *See, Neff Athletic Lettering Co. v. Walters, supra* at 274 (docket congestion is appropriate factor to be considered in determining propriety of transfer). The court has not conducted an inquiry into the size of its docket as compared to that of the Northern District for Georgia, as the court concludes that retention of the case in the present forum will not unduly delay trial of the matter. In any event, this factor would be of little weight, absent a truly exceptional disparity which might exist between the two dockets. *Kisko v. Penn Central Transportation Co.*, 408 F.Supp. 984, 987 (M.D.Pa.1976).

## CONCLUSION

Taking into account all of the foregoing factors, the court concludes that transfer of this action to Georgia would, at best, slightly shift the inconvenience and burdens of litigation from defendant to plaintiffs. While the convenience of the witnesses would be somewhat better served by a Georgia forum, the countervailing factor of Robert Houk's medical condition and, to a lesser degree, the parties' relative financial positions, persuade the court that transfer of this matter to the Northern District of Georgia would not be in the interest of justice. Defendant has presented a close question to the court, but has failed to make the strong showing which would be necessary in order to warrant disturbing plaintiffs' choice of forum.

It is, accordingly,

ORDERED that defendant's motion that this cause be transferred to the United States District Court for the Northern Dis-

trict of Georgia under 28 U.S.C. § 1404(a) shall be and the same is hereby denied.