ARKANSAS RIGHT TO LIFE STATE POLITICAL ACTION COMMITTEE and Marianne Linane, Plaintiffs,

v.

Brad BUTLER, In His Official Capacity as State Attorney for Benton County, Troy Burris, In His Official Capacity as Chairman and Member of the Arkansas Ethics Commission, Rita Looney, In Her Official Capacity as Member of the Arkansas Ethics Commission, Norton Wilson, In His Official Capacity as Member of the Arkansas Ethics Commission,

Candi Sue Russell, In Her Official Capacity as Member of the Arkansas Ethics Commission, and Marvin Delph, In His Official Capacity as a Member of the Arkansas Ethics Commission, Defendants.

Civil No. 97–5064.

United States District Court,
W.D. Arkansas,
Fayetteville Division.

July 11, 1997.

---

■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■

David G. Nixon, Fayetteville, AR, Michael David Holland, Jr., David G. Nixon & Associates, Fayetteville, AR (Local Counsel), James Bopp, Jr., Dale L. Wilcox, Bopp, Coleson & Bostrom, Terre Haute, IN (Lead Counsel), for Plaintiffs.

Brian G. Brooks, Asst. Atty. Gen., Little Rock, AR, for Defendants.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, District Judge.

Currently before the court are defendants' motions to dismiss, motion to transfer, and motion to stay, and plaintiffs' response thereto. For the reasons set forth below, the court finds that said motions should be denied.

## I. Facts

Plaintiffs bring this lawsuit challenging the constitutionality of Initiated Act I of 1996 (hereinafter "the Act"), claiming that it impinges on their First Amendment rights to free speech and association, as well as, their Fourteenth Amendment right to equal protection. Specifically, plaintiffs claim that the Act, which amends Arkansas' limits on campaign contributions, violates the First Amendment by: (1) limiting the amounts that political action committees (hereinafter "PACs") and individuals may contribute to other PACs and political candidates; (2) implementing content-based restrictions on the speech of independent expenditure committees; (3) requiring independent expenditure committees to place disclaimers on political advertisements; (4) conditioning the receipt of a benefit on the content of speech; and (5) banning any contribution during certain periods. Plaintiffs allege that the Act violates the Equal Protection Clause of the Fourteenth Amendment by treating similarly-situated persons differently with respect to the amounts that they may contribute and the benefits they might receive. Plaintiffs seek declaratory and injunctive relief from this court.

There are two plaintiffs in this action. Plaintiff Arkansas Right to Life State Political Action Committee (hereinafter "ARL") is a registered, internal, state political action committee, established by Arkansas Right to Life, Inc., under the laws of the State of Arkansas, that intends to receive and make contributions and independent expenditures. Plaintiff Marianne Linane is a voter and citizen of the State of Arkansas, a resident of Benton County, Arkansas, and a board member of Arkansas Right to Life, Inc. Plaintiff Linane has contributed to political campaigns and political action committees, specifically ARL, in the past and intends to do so again in the future.

The defendants in this action include Brad Butler, the prosecuting attorney for Benton County, Arkansas, the county in which plaintiff Marianne Linane resides, and the members of the Arkansas Ethics Commission (hereinafter "the Commission") in their official capacities. In the complaint, plaintiffs claim that venue is proper in this court because Butler is generally charged with enforcing the laws of the State of Arkansas. The Commission serves as an overseer and partial enforcer of Arkansas' campaign finance laws.

This action was filed on April 30, 1997; however, another action was previously filed challenging the constitutionality of the Act. On February 3, 1997, the case of *Russell v. Burris*, No. 97–0089, was filed in the United States District Court for the Eastern District of Arkansas, Western Division. *Russell*, which is currently pending before the Honorable William R. Wilson, is on an expedited schedule and is set for trial on September 2, 1997. The plaintiffs in *Russell* raise several challenges to Arkansas' campaign financing laws. These challenges include: (1) a claim that the $100 and $300 dollar limits on the amount individuals can contribute to candidates for certain state and local offices violates the individuals' First Amendment rights to freedom of speech, freedom of association, and freedom of political expression; (2) a claim that the limits on the amount that an approved political action committee may donate to candidates for state and local offices violates the Equal Protection Clause of the

Fourteenth Amendment; (3) a claim that the annual limits on contributions that individuals can make to approved political action committees violates their First Amendment right to freedom of association and freedom of political expression; and (4) a claim that the $500 ceiling on annual contributions to independent expenditure committees violates individual donors' First Amendment rights to freedom of association and freedom of political expression.

The case at bar raises all of the same claims raised in *Russell.* However, the case at bar also raises these additional claims: (1) the part of the Act that requires persons making independent expenditures on a campaign to clearly identify the source and disclaim any candidate affiliation violates the plaintiffs' First Amendment free speech rights; (2) the part of the Act that gives a tax credit to individuals, a small donor political action committee, an approved political action committee, or an organized political party, for campaign contributions to candidates, but not to independent expenditure PACs for similar contributions violates ARL's First Amendment right to freedom of speech; and (3) the part of the Act that makes it unlawful for certain elected officials to receive contributions for thirty days before, during, and thirty days after a session of the General Assembly violates the plaintiffs' First Amendment rights to free speech and association.

## II. Discussion

Defendants' motions can best be understood as a series of multilevel arguments. First, the defendants argue that the matter should be dismissed. Defendants argue that the matter should be dismissed as to defendant Butler under Rule 12(b)(1) because no case or controversy exists with regard to Butler. If the court grants the motion to dismiss with regards to Butler, the defendants argue that venue is improper against the remaining defendants and the case should be dismissed pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1406(a).

Second, in alternative to their motions to dismiss, the defendants argue that the matter should be transferred. If the court grants the motion to dismiss with regards to

Butler but denies the motion to dismiss with regards to the remaining defendants, the defendants argue that the case should be transferred to the Eastern District of Arkansas, Western Division, pursuant to 28 U.S.C. § 1406(a), where they claim venue would be proper. Also, if the court denies the motions to dismiss with regards to Butler and the remaining defendants, the defendants argue that the matter should be transferred to the Eastern District of Arkansas, Western Division, pursuant to 28 U.S.C. § 1404(a), so that it might be consolidated with *Russell v. Burris,* No. 97–0089 according to Rule 42(a) of the Federal Rules of Civil Procedure.

Third, and also in the alternative, defendants move that the court stay the matter pending the outcome in *Russell.* The defendants' brief supporting these motions is completely void of any mention of the motion to stay, so the court assumes that the defendants have abandoned this argument. Accordingly, the defendants' motion to stay will be denied without further comment.

The parties do, however, strongly argue both the motions to dismiss and the motion to transfer. The court will address the motions which remain relevant in accordance with the defendants' argument as explained above.

### A. The Motion to Dismiss Defendant Butler

■ Defendants argue that this action should be dismissed as to defendant Butler pursuant to Rule 12(b)(1) because no justiciable case or controversy exists between Butler and the plaintiffs. FED. R. CIV. P. 12(b)(1). Defendants claim that Butler is entitled to dismissal because there is no real and immediate threat of prosecution by Butler of the plaintiffs. Plaintiffs argue that since Butler has a legal duty and is capable of enforcing the Act against plaintiff Linane, he is a proper defendant and there does exist a case or controversy between plaintiffs and Butler. The court agrees with plaintiffs.

■ The issue raised by defendants' motion to dismiss the action with regards to Butler is whether plaintiffs have sufficient standing to raise a claim against him. In

order to satisfy the "case or controversy" requirement of Article III, the party who seeks to invoke the federal courts' authority must show that: (1) he or she personally suffered some actual or threatened injury as the result of the challenged conduct; (2) the injury can be traced to the conduct; and (3) the injury will likely be redressed by a favorable decision from the court. *New Hampshire Right to Life Political Action Committee v. Gardner*, 99 F.3d 8, 13 (1st Cir.1996) (finding that political action committee had standing to challenge the constitutionality of a recently enacted statute concerning the capping of independent political expenditures per election despite the fact that the State represented that it would not prosecute for the expenditures the committee sought to make).

■ "When government action or inaction is challenged by a party who is a target or object of that action ... 'there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it.'" *Minnesota Citizens Concerned for Life v. Federal Election Commission*, 113 F.3d 129, 131 (8th Cir.1997) (invalidating portions of Federal Election Commission regulations governing expenditures by nonprofit corporations) (quoting *Lujan v. Defenders of the Wildlife*, 504 U.S. 555, 561–62, 112 S.Ct. 2130, 2137, 119 L.Ed.2d 351 (1992)).

■ Plaintiffs in the case at bar are not required to subject themselves to either the fine or term of imprisonment found in Ark. Code Ann. § 7–6–202 (Supp.1995) or the penalties outlined in Ark.Code Ann. § 7–6–218 (Supp.1995) in order to challenge the constitutionality of the new restrictions. It is not required that a party expose herself to arrest or prosecution under a criminal statute in order to challenge the statute in federal court. *Gardner*, 99 F.3d at 13.

■ When a plaintiff seeks a declaration that a particular statute is unconstitutional, the proper defendants are the government officials charged with administering and enforcing the statute. *Id.* Defendants argue that history has shown that plaintiffs have no credible threat of prosecution from Butler. Defendants state that even though Arkansas has had contribution limits since 1975, they are aware of no case in which a prosecutor has sought to bring criminal charges for a violation of those limits. Further, defendants argue that since the creation of the Commission in 1990, there has been no referral to law enforcement from the Commission and no prosecutions by a prosecutor for contribution violations.

Despite defendants' arguments, it is clear from the structure of Ark.Code Ann. § 7–6–218(b)(4), that Butler would be responsible for handling a criminal prosecution of Linane under the statute. The statute requires that if the Commission finds a violation has occurred it must do one or more of the following:

(A) Issue a public letter of caution or warning or reprimand;

(B) (i) ... impose a fine of not less than twenty-five dollars ($25.00) nor more than one thousand dollars ($1,000) for negligent or intentional violation of this subchapter, or of subchapters 4–9 of title 21, chapter 8, as amended.

(ii) The Commission shall adopt rules governing the imposition of such fines in accordance with the provisions of the Arkansas Administrative Procedure Act, § 25–15–201 et seq.

. . . . .

(C) **Report its finding, along with such information and documents as it deems appropriate, and make recommendations to the proper law enforcement authorities.**

Ark.Code Ann. § 7–6–218(4)(A)–(C) (emphasis added). It is clear from the statute that, while the Commission may impose fines for violations, it has no power to prosecute under the Act. Instead, the Commission must refer the violation to the "proper law enforcement authorities" who would then pursue a prosecution. Plaintiffs contend, and defendants do not dispute, that if Linane was prosecuted under the Act, Butler is the proper law enforcement authority who would handle her prosecution. Therefore, Butler is a proper defendant as he is a proper government official charged with administering and enforcing the Act.

Defendants attempt to rely on *Poe v. Ullman*, 367 U.S. 497, 508, 81 S.Ct. 1752, 1758–59, 6 L.Ed.2d 989 (1961), to argue that plaintiffs cannot demonstrate a credible threat of prosecution from Butler. In *Poe*, the Supreme Court found that the plaintiffs failed to have standing to bring a suit challenging a Connecticut law which prohibited the use of or advice concerning contraceptives despite the fact that the State's Attorney admitted that he intended to prosecute any offense of the law. *Id.,* 367 U.S. at 498–501, 81 S.Ct. at 1753–55. The *Poe* court held that the case was not ripe for adjudication, because none of the plaintiffs had alleged that the State's Attorney had threatened to prosecute them and the statute had never been enforced.

This court, however, finds *Poe* to be easily distinguishable for the case at bar. First, unlike, *Poe,* plaintiffs in this action are contending that the Act violates their First Amendment rights to free speech. While every plaintiff that brings a pre-enforcement challenge to a statute can contend that they are under a threat of enforcement of the statute, when the statute raises First Amendment free speech concerns, as the Act clearly does, the plaintiff can also argue that she is "chilled from exercising her right to free expression or forgoes expression in order to avoid enforcement consequences." *Gardner,* 99 F.3d at 13. This "chilling effect" is peculiar to the First Amendment context. *Id.* Second, the "tradition" of prosecutions under the Act can hardly be compared to the statute in question in *Poe. Poe* involved a statute that had led to only one prosecution in more than eighty years. *Id.* at 15. The threat of prosecution under such a statute is surely distinguishable from one which has been enacted relatively recently. *Doe v. Bolton,* 410 U.S. 179, 188, 93 S.Ct. 739, 745–46, 35 L.Ed.2d 201 (1973); *Gardner,* 99 F.3d at 15.

While it may be true that Arkansas has had contribution limits since 1975, the court is not convinced that this time span is sufficient to say that not prosecuting under the Act is a deeply embedded way that Arkansas carries out state policy. The fact that Arkansas has recently chosen to address the issue through passage of the Act provides ample grounds for believing that a credible threat of prosecution exists under the Act.

■ The Eighth Circuit Court of Appeals has clearly stated that when a party brings a pre-enforcement challenge to a statute that both provides for criminal penalties and abridges First Amendment rights, a credible threat of present or future prosecution itself works an injury that is sufficient to confer standing. *Minnesota Citizens Concerned for Life,* 113 F.3d at 131. When a pre-enforcement challenge is raised to a recently enacted statute that facially restricts a class to which the plaintiff belongs, "courts will assume a credible threat of prosecution for standing in the absence of compelling contrary evidence." *Gardner,* 99 F.3d at 15. Here, the Act has been recently enacted, it facially restricts the plaintiffs, and violation of the statute can subject the plaintiffs to criminal prosecution. Defendants have failed to provide this court with compelling contrary evidence to indicate that a credible threat of such prosecution does not exist. The court, therefore, will assume the existence of a credible threat of prosecution for the purpose of plaintiffs' standing to challenge the constitutionality of the Act. Accordingly, defendants' motion to dismiss defendant Butler must be denied. Further, since defendants' motion to dismiss this matter in its entirety was dependent upon this court's granting of the motion to dismiss Butler, defendants' motion to dismiss the action in its entirety must also be denied.

## B. Defendants' Motion to Transfer Venue

■ Since the court denied the motion to dismiss with regards to Butler, that portion of defendants' motion to transfer pursuant to 28 U.S.C. § 1406(a) is rendered moot. Thus, the court is left only to decide that portion the defendants' motion to transfer made pursuant to 28 U.S.C. § 1404(a).

Defendants argue that even if the court denies their motions to dismiss with regards to Butler and the remaining defendants, the matter should be transferred to the Eastern District of Arkansas, Western Division so that it might be consolidated with *Russell v. Burris,* No. 97–0089, according to Rule 42(a) of the Federal Rules of Civil Procedure. Defendants contend that transfer is warranted

because: (1) consolidation with *Russell* would prevent duplicative proceedings and (2) *Russell* presents a more convenient forum due to its expedited nature and close proximity to the campaign finance records.

Plaintiffs contend that the defendants have failed to carry their burden of demonstrating that plaintiffs' choice of venue should be disturbed. Plaintiffs argue defendants have failed to show that: (1) the balance of convenience strongly favors a change in venue or (2) the interests of justice require plaintiffs' choice of venue be disturbed. The court agrees with plaintiffs.

Defendants request the transfer of this action to the Eastern District of Arkansas, Western Division under the provisions of 28 U.S.C. § 1404(a). The section provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In order to show that transfer is proper, the defendants must establish that (1) venue is proper in the transferor court; (2) venue is proper in the transferee court; and (3) the transfer is for the convenience of the parties and witnesses and promotes the interests of justice. *Dugan v. M. & W. Dozing & Trucking, Inc.*, 727 F.Supp. 417, 418 (N.D.Ill.1989). It is the third prong of the transfer test which is under contention in this action.

■■■ Obviously, the dispositive issue for deciding defendants' motion to transfer becomes whether the transfer would serve "the convenience of the parties and witnesses and . . . the interest of justice." 28 U.S.C. § 1404(a). Section 1404(a) gives the court discretion to rule on motions to transfer on an "individualized, case-by-case consideration of convenience and fairness." *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 812, 11 L.Ed.2d 945 (1964). A motion to transfer requires the court to "weigh in the balance a number of case-specific factors." *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988).

[T]he court may consider a myriad of factors, including the convenience of the parties, the convenience of the witnesses, the availability of judicial process to compel the attendance of unwilling witnesses, the governing law, the relative ease of access to sources of proof, the possibility of delay and prejudice if a transfer is granted, and practical considerations indicating where the case can be tried more expeditiously and inexpensively.

*Houk v. Kimberly–Clark Corp.*, 613 F.Supp. 923, 927 (W.D.Mo.1985).

■■■ Defendants bear the burden of proving the alternate forum is more convenient than the one chosen by the plaintiffs. *Van Dusen*, 376 U.S. at 646, 84 S.Ct. at 824. In doing so, defendants must overcome the general principle that the plaintiffs' choice of forum should be disturbed only if the balance of convenience strongly favors the defendant. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). *See also* 15 Charles A. Wright, Arthur A. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3848 (2d ed.1986).

Defendants argue that "convenience" requires that this case be transferred and consolidated with *Russell*. While it is true that *Russell* and the case at bar raise a few of the same issues, as explained above, plaintiffs raise a variety of issues not present in *Russell*.

Defendants claim that the case should be transferred and consolidated with *Russell* because *Russell* is on an expedited schedule and "well under way, and on a fast track to resolution." *Russell* was filed on February 3, 1997, and is set for trial on September 2, 1997. The current action was filed on April 30, 1997, and has not been set for trial while the court considers these motions.

The court agrees with plaintiffs that these facts make it less convenient to transfer this action. Not only would transfer cause difficulty to the plaintiffs and to Butler who would be forced to jump into the middle of a case that is well past half way through its designated pretrial time, but transferring and consolidating this action with *Russell* also runs the risk of disturbing that cases progress.

Defendants also contend that the Eastern District, Western Division is a more convenient forum because that is where the records of campaign contributions are on file

with the Secretary of State. While the court recognizes that the records of past campaign contributions are relevant to weighing the constitutional nature of the Act, *see Carver v. Nixon,* 72 F.3d 633, 640–644 (8th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 2579, 135 L.Ed.2d 1094 (1996), the court seriously doubts that it would be any more convenient for the parties to proceed in the Eastern District, Western Division. The court cannot imagine that the parties would attempt or be required to submit all of those records for the court's examination, nor can the court foresee that the parties would be required to continually return to the records for reexamination. Instead, this situation seems to be exactly the type which Rule 1006 of the Federal Rules of Evidence seeks to address. The court would expect that if the parties seek to justify their arguments based upon the records of past campaign contributions that they would do so by taking advantage of Rule 1006 and submitting relevant summaries of such records to the court.

■■■■■ Plaintiffs' choice of forum is given "great weight" and should rarely be disturbed. *Houk v. Kimberly–Clark Corp.,* 613 F.Supp. 923, 927 (W.D.Mo.1985); *Arkansas–Best Freight System, Inc. v. Youngblood,* 359 F.Supp. 1125, 1129 (W.D.Ark.1973). This is especially true where the plaintiff is a resident of the district in which she brought suit. *Houk,* 613 F.Supp. at 927. In the case at bar, plaintiffs chose to file in this district and Linane is a resident of this district. In view of the fact that venue is a procedural rule of convenience, the convenience of the aggrieved party should be first accommodated. *Gardner Engineering Corp. v. Page Engineering Co.,* 484 F.2d 27 (8th Cir.1973).

It is clear to this court that the defendants have failed to carry their burden of proving that transfer is warranted. Accordingly, defendants' motion to transfer this action to the Eastern District, Western Division should be denied.

### III. Conclusion

For the reasons outlined above, the court finds that defendants' motions to dismiss, motion to transfer, and motion to stay should be denied. An order in accordance herewith shall be concurrently entered.